In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1826

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEAN M. HOSKING,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:08-cr-0001-bbc-1—**Barbara B. Crabb**, *Chief Judge.*

ARGUED SEPTEMBER 16, 2008—DECIDED JUNE 4, 2009

Before CUDAHY, FLAUM and ROVNER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Jean M. Hosking pleaded guilty to one count of embezzlement and was sentenced to 34 months in prison and ordered to pay restitution. Hosking appeals, arguing that her victim's costs to investigate her fraud should not have been included in the restitution award. She also challenges the district court's failure to provide a complete accounting of the loss caused by her

fraud, and the order to make a lump-sum payment of $100,000 from her retirement account.

We affirm the principle of including a private victim's investigative costs in the restitution award but vacate and remand for the district court to make findings regarding the amount of those costs. Without such findings it is impossible to review the award's propriety. We also affirm the aspect of the order requiring Hosking to make a lump-sum restitutionary payment from her retirement account.

## I.

Hosking worked for the Cross Plains Bank in Cross Plains, Wisconsin, for almost twenty years. When her fraud was discovered in 2007, she was an assistant vice president, responsible for among other things loans granted under the Wisconsin Petroleum Environmental Cleanup Fund Award (PECFA) program. The bank provides intermediary financing for the PECFA program, which pays for environmental cleanup costs incurred by owners of property contaminated by petroleum storage tanks. After a cleanup site is deemed eligible for a PECFA grant, the property owner takes out a line of credit with the bank, and then submits invoices for cleanup costs to the bank. The bank pays the invoices by allowing advances on the line of credit, and then submits claims for reimbursement to PECFA.

In 1994, Hosking began embezzling money from the bank's PECFA loan program. Her scheme involved taking unauthorized cash advances funded by PECFA loan

accounts and covering her tracks by reimbursing those loan accounts with money taken from other PECFA loan accounts, thereby "lapping" the loan accounts. Hosking's lapping scheme went on for twelve years, and she embezzled funds from twenty-three PECFA accounts. Ultimately, bank officials started asking questions about discrepancies in PECFA loan files, and Hosking confessed. She thought she had taken about $135,000. The bank's internal investigation revealed that she had actually embezzled more than $500,000.

At sentencing, the bank requested restitution of $1,144,889.92. The probation office recommended a reduced restitution award of $712,776.52, which included the $502,246.52 in embezzled funds, $206,280 for the bank's in-house staff costs and $4,250 for miscellaneous paper and copying expenses. Hosking objected, arguing that there was insufficient documentation to support the bank's claim for in-house costs. In response, the government submitted minutes from the bank's meetings relating to the investigation; a declaration of losses from the bank; a description of the PECFA loan process and Hosking's lapping scheme; and a description of each expense the bank incurred in the investigation, with attached invoices and a listing of in-house staff members and the hours they spent on the project.

The district court ordered restitution of $627,895.52. This figure included the $502,246.52 Hosking embezzled from the bank, plus $125,649 for the bank's investigation costs. To reach this new amount for investigation costs, the court added $6,733.90 in legal fees; $11,655.00 in accounting

consultant fees; $4,250.00 in miscellaneous paper and copying expenses; and $103,140.00 for in-house staff costs, or half the amount recommended by the probation office to reimburse the bank for the time its employees spent on the investigation. The district court failed to explain why it cut the in-house staff costs in half, stating only that the reduced amount was "clearly legitimate."[1] The district court also ordered Hosking to make an immediate lump-sum payment of $100,000.00 from her retirement account.

## II.

The district court's authority to order restitution is reviewed de novo, *United States v. Wells*, 177 F.3d 603, 608 (7th Cir. 1999), while the amount of restitution is reviewed for an abuse of discretion, *United States v. Sensmeier*, 361 F.3d 982, 988 (7th Cir. 2004) (citing *United States v. Newman*, 144 F.3d 531, 542 (7th Cir. 1998)). Hosking argues that the district court abused its discretion by including the bank's investigation costs in the restitution award because the only "actual loss" caused by her embezzlement was the $502,246.52 that she took. She labels the additional amount the bank spent on the investigation and professional fees as "consequential damages" not caused by her fraud and therefore not properly included in the award. We disagree in principle but question the amounts claimed.

The Mandatory Victims Restitution Act (MVRA) requires a defendant convicted of certain crimes, "including any

---

[1] The government concedes that the district court made a *de minimis* error of $129.90 in calculating the restitution amount.

offense committed by fraud or deceit," to make restitution to the victims of the offense in an amount equal to the value of the property damaged or lost. 18 U.S.C. §§ 3663A(a)(1), (b)(1), (c)(1)(A)(ii).[2] The MVRA also expressly contemplates inclusion of the cost of "lost income and necessary child care, transportation, and *other expenses incurred during participation in the investigation or prosecution of the offense* or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4) (emphasis added). The bank's investigation was clearly an important part of "the investigation . . . of the offense" in this case. It led to the determination of the actual amount embezzled, and therefore the costs of that investigation may be included in the restitution award under § 3663A(b)(4). *See United States v. Adcock*, 534 F.3d 635, 643 (7th Cir. 2008) (applying § 3663A(b)(4) to include the cost of an external audit in a restitution award because it qualified as "other expenses incurred during participation in the investigation or prosecution of the offense. . . ."); *United States v. Amato*, 540 F.3d 153, 161 (2d Cir. 2008) (including attorney fees and accounting costs in a restitution award "because these

---

[2]    The parties debate whether Hosking's appeal is properly considered under the MVRA or the Victim Witness Protection Act (VWPA). The MVRA is the proper statute, and it requires restitution for crimes such as Hosking's, but for purposes of determining the amount of a restitution order, the two statutes are functionally identical. *See United States v. Randle*, 324 F.3d 550, 555 n.2 (7th Cir. 2003). In particular, both statutes provide that an order of restitution is to be issued and enforced in accordance with 18 U.S.C. § 3664. *See* 18 U.S.C. § 3663(d) (VWPA); *id.* § 3663A(d) (MVRA).

expenses are so obviously associated with investigation and prosecution, particularly in the case of fraud offenses").

In response to Hosking's argument that allowing the bank to recover these costs improperly reimburses the bank for "consequential damages," we have repeatedly explained that it does no such thing. In fact,

> "[t]his measure of relief is less generous than common law damages, since it does not extend to consequences beyond the diminution of the value of the property stolen or damaged." This is because criminal restitution refers only "to the restoration of something that the defendant had taken from the plaintiff, including a profit."

*Adcock*, 534 F.3d at 642 (quoting *United States v. Havens*, 424 F.3d 535, 537 (7th Cir. 2005), further quoting *United States v. Scott*, 405 F.3d 615, 618, 619 (7th Cir. 2005)) (other citations omitted). *See also Scott*, 405 F.3d at 619 (allowing restitution under § 3663A(b)(1) for a victim's external audit costs because such costs represented a diminution in value of the victim's property).

The time and effort spent by the bank's employees and outside professionals in unraveling the twelve-year embezzlement scheme was a direct and foreseeable result of the defendant's conduct that contributed to the diminution of the value of the bank's property. *See* § 3663A(b)(1); *Scott*, 405 F.3d at 619. *See also United States v. Donaby*, 349 F.3d 1046, 1054–55 (7th Cir. 2003). The bank's activities were also an important part of "the investigation . . . of the offense." § 3663A(b)(4); *Adcock*, 534 F.3d at 643. The

sentencing judge was selective. She included only those costs related to uncovering Hosking's fraud. This was not an abuse of discretion.

Hosking argues that even if it was proper to include this category of costs in the restitution award, the sentencing judge nevertheless erred by failing to provide a complete accounting of those costs. Instead, she cut the amount recommended by the probation office for in-house investigation costs in half, and announced without elaboration that the reduced amount was "clearly legitimate." We agree with Hosking that more is needed, both from the government and the district court.

As stated above, *supra* n.2, restitution under the VWPA and the MVRA is awarded and enforced according to 18 U.S.C. § 3664. The district court is required to base its restitution order, to the extent practicable, on "a complete accounting" of the loss. *Id.* § 3664(a). If the presentence report or other report of the loss is insufficient for this purpose, the court may require additional documentation or hear testimony. *Id.* § 3664(d)(4). The court may refer any issue, including the amount of loss, "to a magistrate judge or special master for proposed findings of fact." *Id.* § 3664(d)(6). The court is required to resolve any dispute over the amount of loss by a preponderance of the evidence, and the government has the burden of proving the loss. *Id.* § 3664(e). The court is required to order restitution in the full amount of the victim's losses, "without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A).

Based on the foregoing statutory provisions, we have held that "the VWPA recognizes that specific findings of

fact reflected in the record still are necessary at times and contemplates that district courts provide an explanation of their reasoning, supported by articulated findings of fact." *United States v. Menza*, 137 F.3d 533, 538 (7th Cir. 1998). Again, these provisions apply equally to the MVRA. 18 U.S.C. § 3663A(d). "Unless we know why a district court included specific costs in an order granting restitution, we have no adequate basis upon which to review the decision." *Menza*, 137 F.3d at 538. The sentencing court is only required to supply findings of fact within the bounds of reasonableness in justifying the amount of restitution, but "we have urged district courts to provide articulated findings in order to facilitate appellate review." *United States v. Minneman*, 143 F.3d 274, 285 (7th Cir. 1998). In other words, the sentencing court should give enough detail for us to determine whether the award has factual support. Should the district court fail to provide a satisfactory accounting of the items included in a restitution award, it "runs the risk that we may remand a restitution award based on 'inadequate explanation and insufficient reasoning.'" *Id.* (quoting *Menza*, 137 F.3d at 538).

The district court ran that risk here. At sentencing, the government presented a single document supporting the inclusion of the bank's in-house costs in the restitution award. This document listed the name and title of each employee who worked on the investigation, the number of hours that the employee worked on the project, and the employee's hourly wage rate. The resulting total was a simple tabulation of the amount paid to the employees for their collective hours worked.

This document also briefly and generally described the scope of the investigation. The description included the activities of a few employees, but made no attempt to describe the work done by each one. For example, it explained that many of the employees were not familiar with the PECFA process and had to educate themselves before trying to unravel the defendant's scheme. One senior employee spent an entire year, with substantial assistance from two other employees, focusing on recreating each fraudulent PECFA transaction. A bookkeeping employee spent his time transferring older data from film, while another primarily ran the copying machine. These details are of some help, but they pertain to the work of only a few of the many employees listed in the government's explanatory document. The two-paragraph description of these few employees' roles fails to demonstrate that *all* of the in-house staff costs—or even half of those costs—were proximately caused by Hosking's conduct, produced a diminution in the value of the bank's property or were convincingly claimed as part of the investigation of the offense. 18 U.S.C. §§ 3663A(a)(2), (b)(1), (b)(4).

As in *Menza*, there is inadequate explanation and insufficient reasoning why the district court relied on the face of the government's document without requiring evidence that the costs reported were directly and reasonably demanded by the bank's investigation of Hosking's fraud. Without such evidence and related findings, we cannot determine whether the court's award was appropriate and reasonable. Indeed, simply cutting the reported costs in half, while it may not be far off the mark, cannot suffice. On remand, the government must, to the extent feasible,

provide an explanation, supported by evidence, of how each employee's time was spent in pursuing the investigation. Not only must the work be firmly connected to the investigation but there must be an adequate indication that the hours claimed are reasonable. The court must ensure that all reported costs were in fact incurred in the investigation of Hosking's fraud. It is the government's responsibility to make the connection between the work and Hosking's misconduct. The district court should not have to delve through pages of exhibits "in order to dissect legitimate expenditures from illegitimate." *United States v. Swanson*, 394 F.3d 520, 527 (7th Cir. 2005).

Next, Hosking argues that the district court erred in ordering her to make a lump-sum payment of $100,000 from her retirement account. She asserts that her Individual Retirement Account (IRA), as a qualified trust under the tax code, "may not be assigned or alienated," 26 U.S.C. § 401(a)(13)(A), and therefore that it was not proper to include it in the restitution order. We disagree.

Under the MVRA, "[a] restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A). An order of restitution may be enforced "by all . . . available and reasonable means." *Id.* § 3664(m)(1)(A)(ii). In addition,

> [t]he United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. *Notwithstanding any other Federal law*

(including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against *all property or rights to property* of the person fined. . . .

*Id.* § 3613(a) (emphasis added).

We have never considered whether § 3613(a) supersedes an anti-alienation provision like the one governing Hosking's IRA, a qualified trust under the tax code, 26 U.S.C. § 401(a)(13)(A). However, several other circuits have addressed this question in the context of ERISA's similarly worded anti-alienation provision, 29 U.S.C. § 1056(d). Our sister circuits have concluded that the MVRA allows a district court to consider a defendant's retirement plan as a source of funds to pay restitution. *See United States v. Novak*, 476 F.3d 1041, 1053 (9th Cir. 2007); *United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2006); *see also United States v. Hyde*, 497 F.3d 103, 107–08 (1st Cir. 2007) (holding that the MVRA allows the government to enforce a restitution order against proceeds from the sale of a home notwithstanding the Bankruptcy Code's homestead exemption). We therefore hold that it was within the district court's discretion to charge Hosking's retirement account as a source of funds to provide restitution.

The MVRA authorizes the government to enforce a restitution order through a series of specific means including "all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii). And again, § 3613(a) provides that the United States may enforce a judgment against "all property or rights to property of the person fined," "[n]otwithstanding any other Federal law." Although there are several enumerated exceptions to this provision, none

of them exempts an IRA from enforcement. *See* 18 U.S.C. § 3613(a)(1) (exempting from enforcement four types of federally authorized pension plans under 26 U.S.C. 6334(a)(6), including Railroad Retirement Act pensions, Railroad Unemployment Insurance Act pensions, pensions received by those on the Armed Forces Medal of Honor rolls, and certain pensions paid to military service-members); *see also Novak*, 476 F.3d at 1047–48 (concluding that Congress intended the list of exemptions in § 3613(a)(1) to be exhaustive).

Moreover, § 3613 treats a restitution order under the MVRA like a tax liability. This means that any property the IRS can reach to satisfy a tax lien, a sentencing court can also reach in a restitution order. *See* 18 U.S.C. § 3613(c); *United States v. Irving*, 452 F.3d 110, 126 (2d. Cir. 2006). Thus, the IRS can levy on a tax debtor's IRA or pension plan to satisfy tax liability, so long as the defendant has a right to withdraw money from or liquidate the account. *See Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218, 1223 (10th Cir. 1998) ("[The defendant's] right to liquidate his IRA and withdraw the funds therefrom (even if subject to some interest penalty) undoubtedly constituted a 'right to property' subject to the IRS' administrative levy."); *United States v. Sawaf*, 74 F.3d 119, 123 (6th Cir. 1996) (The anti-alienation provision protecting the defendant's pension fund does not prevent the IRS from garnishing the fund to collect unpaid income taxes.); *In re McIntyre*, 222 F.3d 655, 660 (9th Cir. 2000) (The anti-alienation provision of ERISA does not prevent the IRS from levying on benefits of the defendant's pension plan.); *United States v. Metropolitan Life Ins.*, 874 F.2d 1497, 1501 (11th Cir. 1989) (affirming the district

court's judgment in favor of the IRS, awarding the cash withdrawal value of the delinquent taxpayer's annuity contract); *see also* 26 C.F.R. 1.401(a)-(13)(b)(2)(i)–(ii) (Treasury regulation implementing the tax code's anti-alienation provision, stating that a qualified plan does not preclude "[t]he enforcement of a Federal tax levy made pursuant to section 6331," or "[t]he collection by the United States on a judgment resulting from an unpaid tax assessment").

Since the IRS may levy on a retirement account, it follows that a sentencing court, within its discretion, may order a lump-sum payment from such an account to satisfy a restitution order. *See also United States v. Wahlen*, 459 F. Supp. 2d 800, 822 (E.D. Wis. 2006) (The MVRA creates an exception to the anti-alienation provision protecting a defendant's IRA.); *United States v. Tyson*, 242 F. Supp. 2d 469, 473 (E.D. Mich. 2003) (Section 3613 is an express statutory exception to the anti-alienation provisions of ERISA as well as § 401(a)(13)(A).). We hasten to add, however, that the availability of retirement funds to satisfy a restitution order does not limit the district court's discretion in determining the manner in which restitution should be paid. *See* 18 U.S.C. § 3664(f).

In this connection, Hosking argues that the district court erred by failing to consider her financial situation before ordering the liquidation of her retirement account. Although the MVRA requires the district court to determine the *amount* of restitution without regard to the economic circumstances of the defendant, 18 U.S.C. § 3664(f)(1)(A), in determining *the manner in which the restitution is to be paid*, the court must consider the financial

resources and other assets of the defendant, projected earnings of the defendant and any financial obligations of the defendant. *Id.* § 3664(f)(2)(A)–(C). The court *may* order the defendant to make a single lump-sum payment, reasonable periodic payments, or, if the defendant is indigent, nominal periodic payments. *See* 18 U.S.C. § 3664(f)(3)(A), (B). The court is also required to craft its restitution order "pursuant to [18 U.S.C. §] 3572," *id.* § 3664(f)(2), which provides that "[a] person sentenced to pay a fine or other monetary penalty, including restitution, *shall make such payment immediately*, unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(i) (emphasis added).

Section 3572 "creates a preference" for immediate payment, *United States v. Coates*, 178 F.3d 681, 684 (3d Cir. 1999), but it does not limit the district court's discretion to determine a payment schedule according to the other factors the court must consider under § 3572 and § 3664(f)(2). *See id. Cf. United States v. Sawyer*, 521 F.3d 792, 795 (7th Cir. 2008).

At sentencing, the judge acknowledged Hosking's limited financial means and that her IRA, which had a corpus of roughly $115,000, represented her only source of savings for retirement other than Social Security payments. Nevertheless, the court ordered a lump-sum payment of $100,000 within thirty days of the judgment, to be followed by nominal payments once the defendant is released from prison. The judge noted that she "realized that [the retirement account] does represent the greater amount of money that's set aside for you to live on, but you made that

decision a long time ago to take money that didn't belong to you and that money has to be paid back."

The district judge clearly recognized Hosking's limited means and ordered a schedule of payments that reflected those means. She ordered an immediate payment of $100,000, leaving $15,000 in Hosking's retirement account. Further, the restitution schedule requires Hosking to make only nominal payments after she is released from prison, taking into account her nonexistent projected future earnings. We cannot say that the district judge abused her discretion in this respect. The restitution order is therefore AFFIRMED in part but vacated and remanded in part for further proceedings consistent with this opinion.