# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 21, 2010        Decided April 26, 2011

No. 09-3002

UNITED STATES OF AMERICA,
APPELLEE

v.

VICTOR PAPAGNO,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00259)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Jeremy S. Barber*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney, and *Roy W. McLeese III* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: GRIFFITH and KAVANAUGH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Victor Papagno had a goal: to collect two of every kind of computer or, as he phrased it, to build the "Noah's Ark of Computer land." Unable to buy such a collection, he decided to steal it. Over 10 years, he pilfered 19,709 pieces of computer equipment from his employer, the Naval Research Laboratory.

After he was caught, Papagno pled guilty and was sentenced to 18 months in prison.

At sentencing, the Government requested that the Court order Papagno to pay the Naval Research Laboratory about $160,000 in restitution. That amount would cover the costs the Laboratory incurred in conducting an internal investigation of the wrongdoing. The Government argued that such restitution was required under the Mandatory Victims Restitution Act. *See* 18 U.S.C. § 3663A(b)(4). That Act mandates restitution to certain crime victims "for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *Id.*

The question in this case is whether the costs of the Naval Research Laboratory's internal investigation constituted "necessary . . . expenses incurred during participation in the investigation or prosecution of the offense." The District Court agreed with the Government that the costs of the internal investigation qualified under that statute. The Court therefore ordered Papagno to pay restitution for the $160,000 expended by the Laboratory during its internal investigation.

The statute authorizes restitution for "necessary . . . expenses incurred during participation in the investigation or prosecution of the offense." We do not read that text to authorize restitution for the costs of an organization's internal investigation, at least when (as here) the internal investigation was neither required nor requested by the criminal investigators or prosecutors. In our view, an internal investigation that is neither required nor requested by criminal investigators or prosecutors does not entail the organization's "*participation* in the investigation or prosecution of the offense." *Id.* (emphasis added). Our conclusion is supported by the existence of other restitution statutes – not applicable here – in which Congress provided for restitution in terms that plainly cover the costs of an internal investigation. Our conclusion is further buttressed by the statutory term "necessary": The costs of an internal investigation cannot be said to be necessary if the investigation was neither required nor requested by criminal investigators or prosecutors.

We reverse the District Court's judgment ordering restitution.

I

Victor Papagno was a computer specialist employed by the Naval Research Laboratory in the District of Columbia. In 1997, he began to steal from the Laboratory. Papagno apparently thought nobody would notice when he took home computer equipment.

For 10 years, Papagno stole computers, monitors, printers, and other items. He stockpiled them in his basement, a friend's father's basement, another friend's storage locker, and a two-story, four-car, 2,775-square-foot detached garage Papagno built to store his collection. By August 2007, he had

taken home 19,709 pieces of computer equipment – an average of 37 items per week, every week, for 10 years. The Naval Research Laboratory apparently never noticed that its property was missing.

The Naval Criminal Investigative Service – in essence, the Navy's equivalent of the FBI – first learned of the theft in 2007. The NCIS was tipped off by Papagno's wife – as might be expected, now his ex-wife. Investigators then obtained a search warrant and discovered the medley of machines Papagno had collected. The subsequent criminal prosecution of Papagno was conducted by the United States Attorney's Office for the District of Columbia. Prosecutors from that office eventually filed an information, and Papagno pled guilty.

Meanwhile, the Naval Research Laboratory recovered almost everything that Papagno stole. For reasons that remain unclear, however, the Laboratory then spent an additional $159,183.15 on an elaborate 3,500-hour internal investigation regarding property that was worth as little as $120,000. There is no evidence suggesting that the criminal investigators from the NCIS or the prosecutors from the U.S. Attorney's Office asked the Naval Research Laboratory to conduct its internal investigation. The Government does not dispute that Laboratory officials ordered the internal investigation "for their own purposes."

At sentencing, the Government argued that the Mandatory Victims Restitution Act required Papagno to pay for the costs of the Naval Research Laboratory's internal investigation. The District Court agreed with the Government and ordered Papagno to reimburse the Naval Research Laboratory for the $159,183.15 cost of its internal investigation. The issue on appeal concerns statutory

interpretation; our review of the District Court's interpretation is de novo. *See United States v. Ventura*, 565 F.3d 870, 875 (D.C. Cir. 2009); *see also Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) (if an appellate court "believe[s] that the District Court's factual findings [are] unassailable, but that the proper rule of law was misapplied to those findings, it [may] reverse[] the District Court's judgment"); *Pullman-Standard v. Swint*, 456 U.S. 273, 287 (1982) ("if a district court's findings rest on an erroneous view of the law, they may be set aside on that basis"); HARRY T. EDWARDS & LINDA A. ELLIOTT, FEDERAL STANDARDS OF REVIEW 5 (2007).

## II

The relevant statute in this case requires restitution "for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."  18 U.S.C. § 3663A(b)(4).  The question is whether the costs of the Naval Research Laboratory's internal investigation were "necessary . . . expenses incurred during *participation* in the investigation or prosecution of the offense." *Id.* (emphasis added).

## A

We begin with an overview of the statutory landscape with respect to restitution.

Federal courts may order restitution only when statutes authorize restitution.  Until 1982, federal law authorized restitution only as part of a defendant's probation.  That changed when Congress passed and President Reagan signed the Victim and Witness Protection Act of 1982.  Pub. L. No.

97-291 § 3579, 96 Stat. 1248, 1253 (codified at 18 U.S.C. § 3663). A product of the victims' rights movement that had picked up steam in the 1970s, that Act provides federal courts with discretionary authority to order restitution to victims of most federal crimes. *See* John W. Gillis & Douglas E. Beloof, *The Next Step for a Maturing Victim Rights Movement: Enforcing Crime Victim Rights in the Courts*, 33 MCGEORGE L. REV. 689, 690 (2002). The statute authorizes restitution for three categories of costs: (1) the value of lost property; (2) the expenses of recovering from bodily injury, such as medical expenses; and (3) funeral costs. *See* Pub. L. No. 97-291 § 3579(b)(1) (codified at 18 U.S.C. § 3663(b)(1)) (lost property); *id.* § 3579(b)(2) (codified at 18 U.S.C. § 3663(b)(2)) (bodily injury); *id.* § 3579(b)(3) (codified at 18 U.S.C. § 3663(b)(3)) (funeral costs).

Legislation enacted in 1994 authorized another category of costs in a § 3663 restitution order. That new provision empowers courts to "reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." Pub. L. No. 103-322 § 40504, 108 Stat. 1796, 1947 (codified at 18 U.S.C. § 3663(b)(4)). That language, as we will explain, is similar to the language employed in the mandatory restitution statute at issue in this case.

In 1996, Congress passed and President Clinton approved the statute at issue here – the Mandatory Victims Restitution Act. Pub. L. No. 104-132 § 204, 110 Stat. 1214, 1227 (1996) (codified at 18 U.S.C. § 3663A). As its title indicates, that Act requires restitution in certain federal cases involving a subset of the crimes covered by the Victim and Witness Protection Act of 1982. (Recall that under the 1982 Act, restitution is discretionary, not mandatory.) The subset of

crimes subject to mandatory restitution includes certain violent crimes and property crimes. For the crimes to which it applies, the Mandatory Victims Restitution Act of 1996 requires restitution for the same four categories of costs covered by the 1982 discretionary Victim and Witness Protection Act, as amended: (1) lost property; (2) the expenses of recovering from bodily injury, such as medical expenses; (3) funeral costs; and (4) "lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *Id.*

A 2008 statute granted courts additional discretionary authority to order restitution. Pub. L. No. 110-326 § 202, 122 Stat 3560, 3561 (2008). That provision authorizes restitution to victims of identity theft – but only to victims of identity theft – in "an amount equal to the value of the time reasonably spent by the victim in an attempt to remediate the intended or actual harm incurred by the victim from the offense." 18 U.S.C. § 3663(b)(6). Language of that sort, as we will explain further below, would cover the costs of an internal investigation.

To sum up so far, the legislation enacted in 1982, 1994, 1996, and 2008 has created the following regime for restitution:

- For a broad range of federal crimes, there are four categories of costs subject to discretionary restitution, one of which is "lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663.

- For a subset of those federal crimes, the same four categories of costs are subject to mandatory restitution, one of which again is "lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A.

- For federal identity theft crimes, there are five categories of costs subject to discretionary restitution – the four categories for the broad range of federal crimes listed above and a fifth kind, "the time reasonably spent by the victim in an attempt to remediate the intended or actual harm incurred by the victim from the offense." 18 U.S.C. § 3663(b)(6).[1]

B

The issue in this case concerns the fourth category of costs covered by the 1996 mandatory statute: "lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). We must determine the meaning of "necessary . . . expenses incurred

---

[1] In addition to the Victim and Witness Protection Act and the Mandatory Victims Restitution Act, several other statutes authorize restitution for specific offenses. *See* 18 U.S.C. § 43(c) (damaging or interfering with an enterprise involving animals); 18 U.S.C. § 228(d) (child support violations); 18 U.S.C. § 1593 (peonage, slavery, and trafficking in persons); 18 U.S.C. § 2248 (sex crimes); 18 U.S.C. § 2259 (sexual exploitation of children); 18 U.S.C. § 2264 (domestic violence); 18 U.S.C. § 2327 (telemarketing fraud); 21 U.S.C. § 853(q) (amphetamine and methamphetamine offenses).

during participation in the investigation or prosecution of the offense."

To begin with, the singular "offense" referred to in § 3663A(b)(4) is of course the criminal offense of conviction. The singular "investigation or prosecution" of "the offense" is therefore the criminal investigation and prosecution that is usually conducted by the FBI or other federal investigators and the local United States Attorney's office. The Government does not argue otherwise.

The central question here concerns the statutory term "participation." The Government argues that "participation in the investigation or prosecution of the offense" means anything that significantly *assists* the criminal investigation or prosecution. The Government posits that the Naval Research Laboratory's internal investigation of Papagno's wrongdoing constituted "participation in the investigation or prosecution of the offense" because it assisted the criminal investigators or prosecutors.

We disagree with the Government's effort to equate the terms "assistance" and "participation." In common parlance, the two terms are not equivalent. The company that provides electricity to power the sound system at our oral arguments assists the proceedings, but its employees are not ordinarily said to have participated in the oral argument. Engineers who design soldiers' weapons aid the war effort, but the engineers are not thought to participate in the war; rather, they are said to provide support. Fans at a basketball game might help the home team win the game (and earn the title "sixth man"), but even the fans who wear jerseys and are given the choke sign by the opposing team's star player do not participate in the game. *See* http://www.youtube.com/watch?v=UrtVZftjbhk. A health insurance company may pay for a patient's

operation, but the insurer does not participate in the operation at the hospital. The hardy Bostonians who hold cups of water on the side of the road help runners in the marathon, but they do not themselves participate in the race. The officers who provide security at a Taylor Swift show certainly assist, but no one would say that they participate in the performance.

The dictionary definition of "participation" is the "act of taking part or sharing in something." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1319 (3d ed. 1996); *see also* BLACK'S LAW DICTIONARY 1229 (9th ed. 2009) ("The act of taking part in something, such as a partnership, a crime, or a trial.").

Consistent with common parlance and the dictionary definition, the Supreme Court has rejected the proposition that "aid" equals "participation." In *Reves v. Ernst & Young*, for example, the Court considered whether the word "participate" – as used in RICO – is a synonym for "aid and abet." 507 U.S. 170, 178-79 (1993). The Court held that "participate" does not cast so broad a net: Individuals do not "participate . . . in the conduct of . . . affairs" simply because they "aid and abet" the affairs. *Id.* at 179. Instead, the Court recognized that "'participate' appears to have a narrower meaning." *Id.* at 178. It added that the "common understanding of the word 'participate'" is "'to take part in.'" *Id.* at 179 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1646 (1976)). In *Pennsylvania Department of Corrections v. Yeskey*, the Supreme Court again defined "participate" as to "have a share in common with others; to partake; share, as in a debate." 524 U.S. 206, 211 (1998) (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 1782 (2d ed. 1949)).

Applying the common understanding and dictionary definition, as well as the Supreme Court's precedents, we

conclude that the Naval Research Laboratory was not participating in the criminal investigation or prosecution of Papagno when it conducted its internal investigation.[2] The criminal investigators and prosecutors neither required nor requested the Laboratory's internal investigation. Indeed, the Government itself acknowledged that Laboratory officials conducted the internal investigation "for their own purposes." The possibility that the Laboratory's internal investigation might later assist the criminal investigation or prosecution – for example, in plea negotiations – does not mean those who conducted the internal investigation were somehow taking part in the separate, criminal investigation or prosecution conducted by the criminal investigators and prosecutors.

The oddity of the Government's argument becomes even more apparent when we consider that an organization's internal investigation could begin either before or after the criminal investigation begins. If assisting the criminal investigation were alone enough to constitute "participation" in the criminal investigation, as the Government argues, then even an internal investigation that *preceded* the criminal investigation could qualify as "participation." That result seems anomalous at best: After all, one cannot ordinarily be participating in something that has not yet begun.

Our reading of the term "participation" to exclude an organization's internal investigation – at least one that has not been required or requested by criminal investigators or prosecutors – is further buttressed by Congress's 2008 amendment to the discretionary restitution statute. As we

---

[2] An "internal investigation" is a term generally used when an organization asks an attorney, investigator, or auditor to look into suspected wrongdoing within the organization and determine, for example, what went wrong, whom to hold accountable, and how to prevent recurrence of the problem.

noted above, Congress in 2008 authorized restitution for "an amount equal to the value of the time reasonably spent by the victim in an attempt to remediate the intended or actual harm incurred by the victim from the offense." 18 U.S.C. § 3663(b)(6). That kind of language encompasses the reasonable costs of an organizational victim's internal investigation, even if the internal investigation was neither required nor requested by the criminal investigators or prosecutors. Such language would authorize the restitution the Government is seeking in this case, if it applied to Papagno's crime. But it doesn't. Congress limited that new provision to identity theft crimes. And Congress did not add similar language to the mandatory restitution statute at issue in this case. As the Supreme Court has often stated, when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Kucana v. Holder*, 130 S.Ct. 827, 838 (2010).[3] We thus must assume

---

[3] The dissimilar language need not always have been enacted at the same time or found in the same statute. For example, the Supreme Court pointed to language in the Comprehensive Environmental Response, Compensation, and Liability Act (enacted in 1980) when it interpreted the Resource Conservation and Recovery Act (enacted in 1976) to exclude reimbursement for certain environmental cleanup costs. The Court reasoned that Congress "demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and . . . the language used to define the remedies under RCRA does not provide that remedy." *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996); *see also United States ex rel. Eisenstein v. City of New York*, 129 S.Ct. 2230, 2235 (2009) (when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"); *Dean v. United States*, 129 S.Ct. 1849, 1854 (2009) (same); *Nken v. Holder*, 129

Congress acted intentionally (in 2008 and before) in deciding when to authorize restitution for costs of the kind associated with internal investigations. *See generally Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77 (1994).

One final and additional problem with the Government's position: The statute here authorizes restitution only for "necessary" costs. It is difficult – indeed, impossible – to argue that an internal investigation neither required nor requested by criminal investigators was an expense *necessary* for the Naval Research Laboratory's participation in the investigation or prosecution of the offense. In our view, the term "necessary" further demonstrates the problems with the Government's interpretation of this statutory provision.

Under the above analysis, the next question becomes: What costs do qualify as "necessary . . . expenses incurred during participation in the investigation or prosecution of the offense"? We think that standard would clearly encompass, for example, the costs associated with a victim's wearing a wire, at the FBI's request, to a meeting with a witness. It would also include the expense involved in producing documents in response to a subpoena or document request. In those examples, however, the victim is at least doing something required or requested by the criminal investigators or prosecutors. We have trouble seeing how a victim can be

---

S.Ct. 1749, 1759 (2009) (same); *Carcieri v. Salazar*, 129 S.Ct. 1058, 1065 (2009) (same); *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671 (2008) (same); *Lopez v. Gonzales*, 549 U.S. 47, 55 (2006) (same); *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) (same); *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 63 (2006) (same principle); *S.D. Warren Co. v. Maine Board of Environmental Protection*, 547 U.S. 370, 384 (2006) (same).

said to participate in the criminal investigation or prosecution when (as here) it is conducting its own internal investigation for its own purposes – an internal investigation neither required nor requested by criminal investigators or prosecutors.[4]

To be clear, although we hold today that the statute does not reach the costs of an internal investigation that was not required or requested by the criminal investigators or prosecutors, we do not mean to suggest that the statute always covers the costs of one that was. We leave open whether and under what circumstances the costs of an internal investigation would be covered if required or requested by criminal investigators or prosecutors.[5]

It is true that Papagno's activities caused, in some Palsgrafian sense, the costs incurred by the Naval Research Laboratory for its internal investigation. But this particular restitution provision – unlike some others – does not afford a right to reimbursement for all costs caused in some sense by the defendant. This is not a consequential damages statute. This text has a narrower focus. We cannot distort the language of this statute to achieve an objective that its text does not reach. Congress of course remains free to alter or

---

[4] Costs incurred from attending FBI interviews, grand jury proceedings, and trial proceedings also qualify for restitution under § 3663A(b)(4). The statute explicitly provides restitution for those costs by specifying coverage for "attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4).

[5] It is not particularly common for criminal investigators to ask an organization to conduct an internal investigation. Criminal investigators tend to think such activity can compromise the criminal investigation or subsequent prosecution – for example, by multiplying witness statements.

update the statute, as it has done with restitution statutes on several occasions.

In reaching our conclusion, we recognize that several other courts of appeals have taken a broader view of the restitution provision at issue here. *See, e.g.*, *United States v. Amato*, 540 F.3d 153 (2d Cir. 2008); *United States v. Elson*, 577 F.3d 713 (6th Cir. 2009); *United States v. Hosking*, 567 F.3d 329 (7th Cir. 2009); *United States v. Stennis-Williams*, 557 F.3d 927 (8th Cir. 2009). We have carefully considered the reasoning of those decisions but respectfully disagree.

\* \* \*

We hold that the costs of the Naval Research Laboratory's internal investigation were not "necessary . . . expenses incurred during participation in the investigation or prosecution of the offense" for purposes of the Mandatory Victims Restitution Act. We reverse the District Court's judgment ordering restitution.

*So ordered.*

APPENDIX

## § 3663. Order of restitution

\* \* \*

(b) The order **may** require that such defendant –

(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense –

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of –

(i) the value of the property on the date of the damage, loss, or destruction, or

(ii) the value of the property on the date of sentencing,

less the value (as of the date the property is returned) of any part of the property that is returned;

(2) in the case of an offense resulting in bodily injury to a victim including an offense under chapter 109A or chapter 110 –

(A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

(B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

(C) reimburse the victim for income lost by such victim as a result of such offense;

(3) in the case of an offense resulting in bodily injury also results in the death of a victim, pay an amount equal to the cost of necessary funeral and related services;

**(4) in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense;**

(5) in any case, if the victim (or if the victim is deceased, the victim's estate) consents, make restitution in services in lieu of money, or make restitution to a person or organization designated by the victim or the estate; and

**(6) in the case of an offense under sections 1028(a)(7) or 1028A(a) of this title, pay an amount equal to the value of the time reasonably spent by**

**the victim in an attempt to remediate the intended or actual harm incurred by the victim from the offense.**

\* \* \*

## § 3663A. Mandatory restitution to victims of certain crimes

\* \* \*

(b) The order of restitution **shall** require that such defendant –

(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense –

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to –

(i) the greater of –

(I) the value of the property on the date of the damage, loss, or destruction; or

(II) the value of the property on the date of sentencing, less

19

(ii) the value (as of the date the property is returned) of any part of the property that is returned;

(2) in the case of an offense resulting in bodily injury to a victim –

(A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

(B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

(C) reimburse the victim for income lost by such victim as a result of such offense;

(3) in the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

**(4) in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.**

\* \* \*