NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2010
Decided August 12, 2010

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-4150

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 03 CR 546-2 |
| KATHLEEN LESTINA, *Defendant-Appellant*. | Elaine E. Bucklo, *Judge*. |

**O R D E R**

Kathleen Lestina pleaded guilty in 2003 to mail fraud, 18 U.S.C. § 1341, and was sentenced to 37 months' imprisonment and ordered (jointly with codefendant John Gibbons) to pay restitution of $22.8 million. Lestina contests the district court's postjudgment decision to double her monthly restitution payments. We affirm.

Lestina's fraud precipitated the collapse of Ty-Walk Liquid Sales Inc., a grain elevator and fertilizer manufacturer. Lestina, who was Ty-Walk's Vice President of Grain Policy and Procedure, admitted in her plea agreement that she made false statements to lenders by inflating the amount of grain available and pledging the same grain as collateral to several lenders as part of a scheme to increase the credit available to the enterprise.

When the loans came due, Ty-Walk defaulted, and the lenders were left with insufficient collateral. In her plea agreement, Lestina agreed that she would be liable for restitution in the amount the district court determined. The district court found that Lestina and Gibbons, the CEO at Ty-Walk, were jointly liable for $22,844,825 in restitution and ordered that full restitution be paid immediately. Lestina did not file a direct appeal, and thus did not challenge the amount of restitution or the order to pay immediately. The government had recovered about $27,000 from Lestina by the time she was released from prison. After that she began paying restitution at the direction of the probation office. Her monthly payments were initially set at $200 but eventually increased to $1,000.

In late 2009, after Lestina had submitted a current financial statement as required by her plea agreement and the conditions of her supervised release, her probation officer concluded that she could afford to pay $2,000 a month. Lestina had reported on her financial statement, which she prepared in August, that she brings home $2,284 after taxes each month from her job as a legal secretary. Her husband, she disclosed, was bringing home $6,198 each month after deductions for taxes, insurance, and 401(k) contributions, plus another $810 in mileage reimbursements. The couple, who have no children and pay no mortgage or rent, identified monthly household expenses of $2,480, leaving $6,812 available for discretionary spending. Lestina also reported that she owns a one-third share in her family's farm, and a one-half interest in the home she and her husband occupy. She valued her shares of the farm at $80,000 and the home at $87,500.

When Lestina balked at the probation officer's proposed increase, the government sought a court order raising the monthly obligation to $2,000. Lestina objected that the government had overstated the couple's discretionary income because, she said, her husband's take-home pay fluctuates because he is paid on commission. She submitted the July 2009 pay stubs to support her contention, but did not provide an estimate of her husband's annual salary or typical paycheck. The district court granted the government's motion to set monthly payments at $2,000.

On appeal Lestina contends that the district court erred because, she says, there was no factual or legal justification for doubling her payments to $2,000. She insists that the court did not adequately consider that her husband's income fluctuates, leading to what Lestina characterizes as "the commingling of household expense funds and restitution funds to meet both obligations." Finally, she argues that it is unfair to require her innocent spouse to shoulder nearly all the joint household living expenses while more than 90% of her income must be used to make restitution payments. We review a restitution schedule for abuse of discretion. *United States v. Hosking*, 567 F.3d 329, 336 (7th Cir. 2009).

Lestina's only developed argument on appeal is that the district court had an insufficient factual basis for increasing her monthly payment to $2,000. Under the Mandatory Victim Restitution Act, the court was required to consider "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. § 3664(f)(2); *see United States v. Day*, 418 F.3d 746, 753 (7th Cir. 2005).

In seeking the increase from $1,000 to $2,000, the government relied on Lestina's financial statements from November 2008 and August 2009. Both documents comprise Lestina's own reporting of her and her husband's assets, earnings, and expenses. The two financial statements speak to all three factors the district court was required to consider. *See* 18 U.S.C. § 3664(f)(2). Lestina never impugned her submissions by suggesting they were falsified or that she had mistakenly overstated her household earnings or understated the expenses. Because the court considered the appropriate factors, and there is no suggestion the court relied on an inappropriate consideration, it did not abuse its discretion in ordering the revised schedule of payments. *See Hosking*, 567 F.3d at 336.

Lestina essentially contends that she truthfully reported her current income on the August 2009 financial statement but should have been given a break because her husband's income varies. Her husband's earnings as stated on the August 2009 financial statement were exaggerated, she says, because in the prior month he had received three instead of two paychecks. Her husband's income, Lestina explains, always varies because it is dependent on commission.

But these caveats were noted in her addendum to the August 2009 financial statement and were repeated in her response to the government's motion. Lestina does not suggest what alternative figure for her husband's income the court should have considered (she did not provide an annual estimate), nor does she even contend that her household income in any month would be insufficient to pay ordinary expenses and still make a $2,000 monthly restitution payment. Even if her husband's monthly income is usually closer to the figure of $5,487 reported on Lestina's November 2008 financial statement—and she has never characterized that month as atypically high—Lestina would still have sufficient income to comfortably pay $2,000 monthly while covering all other household expenses. She also does not explain how her husband's income would ever be used to satisfy the restitution payment if her own income (which she does not say varies) is always sufficient to make the $2,000 restitution payment.

Moreover, as the government points out, if Lestina's financial position shifts and she is unable to meet her monthly household expense obligations—if her husband's income should substantially drop, for example—the MVRA provides that the payment schedule may be altered. 18 U.S.C. § 3664(k); *United States v. Sawyer*, 521 F.3d 792, 796 (7th Cir. 2008). Lestina makes no argument that this provision is inadequate to safeguard against her speculation that changed circumstances might make a $2,000 payment onerous.

Lestina thinks it is unfair that the revised payment amount requires that she commit most of her income to her restitution, leaving her husband to pay most of the household bills. But Lestina's appeal to fairness overlooks the considerable indulgence she has already received in this case. Though Lestina has a current obligation of $22 million, the government thus far has not sought to take her interest in the family farm or home. The government could have gone after those assets because the order of restitution in the criminal judgment acts as a lien in favor of the United States "on all property and rights to property of the person," with the same enforcement rights as a tax lien. *See* 18 U.S.C. § 3613(c); *Hosking*, 567 F.3d at 335. And whether or not Lestina is in a position to advocate for her husband (who did not try to appear in the district court as an interested party, *see United States v. Kollintzas*, 501 F.3d 796, 800 (7th Cir. 2007)), her argument that the restitution schedule is unfair to her husband rings hollow. Spouses have a general obligation to support each other, *see* 305 ILCS 5/10-2; *Poindexter v. State ex rel. Dep't of Human Servs.*, 890 N.E.2d 410, 415 (Ill. 2008), but there is no requirement that each spouse contribute equally—or at all—to the support of the other so long as each is supported, *see In re Estate of McGloon*, 548 N.E.2d 438, 440 (Ill. App. Ct. 1989) (holding that both husband and wife are obligated to support each other based on relative ability to pay). As Lestina's own reporting reveals, this restitution award puts neither Lestina nor her husband in danger of having unmet financial obligations.

Finally, Lestina implies that the district court acted arbitrarily because the court's written order lacks any explanation. But Lestina fails to explain what else needed to be said. The district court spelled out that she still owes $22 *million* and that "[b]ased on the financial disclosure provided to the United States, defendant is able to make payments of at least $2,000 per month." Lestina has more than $4,000 in disposable household income even *after* subtracting $2,000 for restitution, and a personal stake of at least $160,000 in assets the government has the right to seize but has not. Further explanation was unnecessary.

AFFIRMED.