# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3117

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JACK M. LEE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 93-CR-10075—**Michael M. Mihm**, *Judge.*

ARGUED APRIL 12, 2011—DECIDED OCTOBER 3, 2011

Before KANNE and EVANS*, *Circuit Judges*, and CLEVERT,
*District Judge.***

---

* Circuit Judge Evans died on August 10, 2011, and did not
participate in the decision of this case, which is being resolved
by a quorum of the panel under 28 U.S.C. § 46(d).

** The Honorable Charles N. Clevert, Jr., Chief Judge of the
United States District Court for the Eastern District of Wis-
consin, sitting by designation.

CLEVERT, *District Judge*.   Jack M. Lee pleaded guilty in 1997 to multiple counts of fraud, money laundering, and perjury. He was sentenced to 78 months' imprisonment, five years of supervised release, and ordered to pay $1,587,321.50 in restitution and to forfeit $337,000.[1] By the time Lee completed his supervised release, most of the restitution remained unpaid. The government sought and received a turnover order targeting payments Lee had received from three retirement savings plans provided through his employer. Lee appeals that order contending that the government is entitled to no more than 25% of the distributions.

Because the notice of appeal was filed 28 days after the turnover order was entered on the criminal docket, the court will take a suggested detour to address timeliness. Federal Rule of Appellate Procedure 4(b)(1) gives criminal defendants fourteen days to appeal following entry of the judgment or order being appealed. Fed. R. App. P. 4(b)(1)(A)(I). In a civil case to which the United States is a party, "the notice of appeal may be filed by any party within 60 days after the judgment or order being appealed from is entered." Fed. R. App. P. 4(a)(1)(B). Admittedly, "drawing the line between civil and criminal matters for purposes of Rule 4(b) is difficult because

---

[1]  When the government could not locate the $337,000 in Lee's disclosed assets, it attempted to seize his real estate, including Lee's wife's interest in the property. This court reversed the district court's forfeiture of the home finding that Lee's wife was entitled to the property during her lifetime, but affirmed the conviction. *United States v. Lee*, 232 F.3d 556 (7th Cir. 2000).

many appealable orders technically 'in' criminal cases look more civil than criminal—from the return of bond money to motions under 28 U.S.C. § 2255 that parallel the civil petition for a writ of habeas corpus." *United States v. Taylor*, 975 F.2d 402, 403 (7th Cir. 1992).

This court has held that district courts may entertain civil garnishment and other collection proceedings as postjudgment remedies within an underlying criminal case. *United States v. Kollintzas*, 501 F.3d 796, 800-01 (7th Cir. 2007) ("[N]othing precludes the government from initiating a collection proceeding under an existing criminal docket number in order to collect a fine or restitution ordered as part of the criminal sentence."). In addition, appeals from orders in criminal cases may be treated as civil matters where they are collateral to criminal punishment. *United States v. Apampa*, 179 F.3d 555, 556 (7th Cir. 1999). For example, an order denying a motion for return of property has been deemed civil, *Taylor*, 975 F.2d at 403, as has an order refusing to issue a "certificate of innocence" to a former defendant. *Betts v. United States*, 10 F.3d 1278, 1283 (7th Cir. 1993).

Here, the government sought the turnover order pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), which permits courts to enforce restitution orders using the same practices and procedures for the enforcement of a "civil judgment" under federal or state law. 18 U.S.C. § 3613(a). The order was entered after Lee served his term of supervised release and more than ten years following entry of judgment. To that end, the order requiring the turnover of funds from Lee's retire-

ment savings plans appears to be ancillary to—rather than a part of—the core criminal case. The court construes Lee's appeal as governed by Rule 4(a)(1), and, therefore, timely.

The targeted funds in dispute are defined as: (1) a defined benefit plan; (2) a 401(k) plan; and (3) a "non-qualified" plan. Lee will receive an annual mandatory payment estimated to be approximately $3,000 under the defined benefit plan as long as he works for his current employer. Under the 401(k) plan, Lee will receive an in-service distribution of approximately $38,000 and an annual mandatory payment of approximately $2,000. Finally, as to the non-qualified plan, Lee is ineligible for any benefit until he is terminated, retires, or dies. At that time his estate would receive payments over 60 months. However, the exact amount of the non-qualified plan funds available for distribution is unknown and dependent upon the success of his employer.

Lee and the government agree that "any lump sum distribution he may receive from the plans is subject to turnover" and that the government cannot obtain any funds until he has a right to receive the funds from the retirement savings plans. However, Lee maintains that the Consumer Credit Protection Act ("CCPA") limits garnishment to 25% of the party's "aggregate disposable earnings of any individual workweek," 15 U.S.C. § 1673(a), and plainly subjects periodic payments to the 25% limitation. The district court held that the plan benefits, which are not paid in correspondence with an individual

workweek, are not subject to the CCPA garnishment limitations. Noting a distinction between wages and assets that originated as wages, the court reasoned that the CCPA may limit payments from an employer to a retirement plan, but such funds are no longer restricted once the money entered the plan and distributions are received.

The MVRA requires a sentencing court to impose restitution in the full amount of the victim's losses, *United States v. Newman*, 144 F.3d 531, 537 (7th Cir. 1998), and this court has held that a district court may consider the defendant's retirement account as a source of funds to provide restitution. *United States v. Hosking*, 567 F.3d 329, 335 (7th Cir. 2009). Specifically, the MVRA allows the government to enforce restitution fines "against all property or rights to property of the person fined." 18 U.S.C. § 3613(a). But, enforcement is not without limits and the CCPA establishes a garnishment ceiling of 25% of a debtor's "disposable earnings" for a week, or the amount by which the debtor's disposable earnings for that week exceed 30 times the federal minimum hourly wage, whichever is less. 15 U.S.C. § 1673(a).

"Disposable earnings" are defined as "that part of the earnings of any individual remaining after the deduction from those earnings any amounts required by law to be withheld." 15 U.S.C. § 1672(b). The CCPA, in turn, defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commissions, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a) (emphasis added).

Notwithstanding this plain language, the district court held that the CCPA was not intended to protect retirement distributions because they are not wages. The Supreme Court in *Kokozska v. Belford*, 417 U.S. 642, 648 (1972), cautioned that earnings do not pertain to every asset traceable in some way to compensation; however, the issue in *Kokozska* was whether an income tax refund check was subject to the 25% garnishment limitation. *Id.* at 648-49. Neither the statutory language nor the legislative history or purpose supported treating the tax refund as earnings even though it was traceable to earnings. Unlike the reference to "periodic payments pursuant to a pension or retirement program," § 1672 does not mention tax refunds.

The district court cited *United States v. DeCay*, 2009 WL 36623 (E.D. La. 2009), a decision that was not reported, for its holding that the plan benefits subject to garnishment are not subject to the 25% limitation of the CCPA. However, *DeCay* was reversed one month after the district court issued its decision. The Fifth Circuit Court of Appeals held that the CCPA statutory limitation is unambiguous in that it defines "earnings" to include "periodic payments made pursuant to a pension or retirement program." 620 F.3d 534, 544 (5th Cir. 2010). Where a pension or retirement program authorizes payments, the payments are made "pursuant to" the fund and therefore constitute "earnings." *Id.* Hence, the government cannot garnish more than 25% of pension distributions.

The statutory language refers to periodic payments, which describe the $2,000 and $3,000 annual payments

from Lee's 401(k) and defined benefit pension plan. Although the statutory definition of "earnings" cover compensation paid or payable for personal services regardless of whether they are labeled as wages, salary, bonus or otherwise, the plain language also embraces "periodic payments made pursuant to a pension or retirement program." 15 U.S.C. § 1672(a). Black's Law Dictionary defines the term "pursuant to" as "in compliance with; in accordance with; under [or] . . . as authorized by . . . [or] in carrying out." Black's Law Dictionary 1356 (9th ed. 2009). Given the unambiguous language of the statute, periodic payments from a pension or retirement savings plan made in accordance with its terms would be made "pursuant to" the pension or retirement plan and therefore be subject to the 25% limitation of the CCPA.

For these reasons, the court VACATES the district court's order granting the government's motion for turnover and REMANDS for further proceedings consistent with this decision.