In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2858

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RAFI SAYYED,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 625-1 — **Gary Feinerman**, *Judge.*

ARGUED FEBRUARY 22, 2017 — DECIDED JULY 6, 2017

Before BAUER and WILLIAMS, *Circuit Judges*, and DEGUILIO,
*District Judge*.[*]

WILLIAMS, *Circuit Judge*. Rafi Sayyed was ordered to pay
$940,000 in mandatory restitution to the American Hospital
Association after pleading guilty to mail fraud. The United
States sought to collect part of the restitution with approximately $327,000 contained in Sayyed's retirement accounts.

[*] Of the Northern District of Indiana, sitting by designation.

The district court granted the government's motion for turnover orders. On appeal, Sayyed maintains that the district court erred in failing to find that his retirement funds qualify as "earnings" subject to the 25% garnishment cap under the Consumer Credit Protection Act. We disagree. Because the garnishment cap only protects periodic distributions pursuant to a retirement program and the government may reach Sayyed's present interest in his retirement funds, the district court properly granted the government's turnover motion.

## I. BACKGROUND

From 2003 to 2006, while employed as Director of Application for the American Hospital Association ("AHA"), Rafi Sayyed directed overpriced contracts to companies in exchange for kickbacks. For his crimes, Sayyed plead guilty to one count of mail fraud, in violation of 18 U.S.C. § 1341, was sentenced to three months' imprisonment and ordered to make restitution payments to the AHA in the amount of $940,450.00, pursuant to the Mandatory Victims Restitution Act. 18 U.S.C. § 3663A. As of November 20, 2015, Sayyed still owed $650,234.25.

In post-conviction proceedings, the United States sought to enforce the restitution judgment pursuant to 18 U.S.C. § 3613, which permits the government to enforce a restitution judgment "in accordance with the practices and procedures for the enforcement of a civil judgment." The government served citations to The Vanguard Group ("Vanguard") and Aetna, Inc. ("Aetna") to discover assets in Sayyed's retirement accounts. After receiving answers, the government filed a motion for turnover orders alleging that the companies possessed retirement accounts with approximately $327,000 in non-exempt funds that could be used to satisfy the judgment.

Sayyed responded to the government's motion arguing that his retirement accounts were exempt "earnings" subject to the 25% garnishment cap of the Consumer Credit Protection Act (the "CCPA").

The district court granted the government's motion, finding that because Sayyed, who was 48-years-old at the time, had the right to withdraw the entirety of his accounts at will, the funds were not "earnings" and so were not exempt under the CCPA. The district court directed Vanguard and Aetna to pay the Clerk of Court the liquidated value of the funds and ordered the Clerk to reserve a portion of the funds in escrow for the income tax consequences of the early withdrawal.

## II. ANALYSIS

"The district court's turnover order is a final judgment, which we review de novo." *Maher v. Harris Trust & Sav. Bank*, 506 F.3d 560, 561 (7th Cir. 2007) (quotation and citation omitted). We have previously held that a district court may enforce restitution fines against a defendant's retirement account, pursuant to 18 U.S.C. § 3613(a). *See United States v. Lee*, 659 F.3d 619, 621 (7th Cir. 2011); *United States v. Hosking*, 567 F.3d 329, 335 (7th Cir. 2009). 18 U.S.C. § 3613(a) states that "a judgment imposing a fine may be enforced against all property or rights to property of the person fined." However, enforcement is subject to Section 303 of the CCPA, which creates a garnishment ceiling of 25% of a debtor's disposable earnings for a week. 18 U.S.C. § 3613(a)(3); *see* 15 U.S.C. § 1673(a)(1).

Sayyed contends that the funds in his retirement accounts meet the CCPA's definition of "earnings" and so are subject to the 25% garnishment cap. Sayyed does not dispute the district court's conclusion that he has a present right to receive the

entire balance of his retirement accounts. Instead, he offers three arguments to assert that the CCPA's garnishment cap applies to his retirement accounts. First, he asserts that *Lee*, 659 F.3d 619, held all retirement funds are "earnings" subject to the garnishment cap. He then argues that even if lump-sum distributions from a retirement account are not subject to the garnishment cap, the government must wait until he reaches retirement age and elects a form of distribution (*i.e.,* lump-sum distribution or periodic payments) before deciding whether the CCPA's garnishment cap applies in his case. Finally, Sayyed contends that his retirement funds meet the definition of "earnings" because the accounts are funded directly by his earned wages. These arguments fail for the reasons explained below.

### A. Not all retirement funds are "earnings"

Sayyed erroneously attempts to enlarge our holding in *United States v. Lee*, 659 F.3d 619, 621 (7th Cir. 2011), by arguing we held that all retirement funds are "earnings" subject to the 25% garnishment cap. *Lee*'s holding, however, is much narrower: we only held that annual *periodic* payments from the defendant's retirement accounts met the definition of "earnings" subject to the 25% garnishment cap, as the CCPA expressly defines "periodic payments pursuant to a pension or retirement program" as "earnings." *Id.*; *see* 15 U.S.C. § 1672(a). In fact, in *Lee*, the parties "agree[d] that any lump sum distribution [that Lee] may receive from the plans [would be] subject to turnover[.]" *Id.* at 621. So, a defendant's present ability to access a lump-sum distribution of his entire retirement account was not at issue in *Lee*. In other words, *Lee* applies only to the government's ability to access funds periodically paid out from a retirement fund, not the government's ability to

access a lump-sum payment of funds contained within a retirement account, as is the issue here.

### B. Government can seize Sayyed's present right to distribution of funds

Sayyed next argues that the court must wait nearly twenty years, until he reaches the age at which he can begin receiving penalty-free distributions from his retirement accounts, to see whether he elects to receive lump sum distributions of his entire accounts or if he elects periodic payments before the court decides the applicability of the CCPA's garnishment cap. But he fails to show any support, in *Lee* or elsewhere, for this sweeping proposition.

Instead, a restitution order is a lien in favor of the government on "all property and rights to property" of the defendant and is treated as if it were a tax lien. 18 U.S.C. § 3613(c); *see also United States v. Kollintzas*, 501 F.3d 796, 802 (7th Cir. 2007). With the exception of exempt property, which is not at issue here, this broad language is intended to "reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985). This means the government steps into the defendant's shoes, "aquir[ing] whatever rights the [defendant] himself possesses." *Id*. at 725. Sayyed does not dispute that he has a present, unconditional right to access his Vanguard and Aetna funds. So, here, where Sayyed "has the unrestricted right to withdraw funds from the account, it is inconceivable that Congress … intended to prohibit the Government from levying on that which is plainly accessible to the [defendant]." *Id*. at 726 (internal quotation marks and citation omitted). It would be illogical for us to find that the government acquires every interest in property Sayyed has, but then impose a limitation requiring the

government to wait nearly twenty years to see what form of distribution Sayyed elects simply because he states he would not exercise his present right to receive lump-sum distributions. The law is not based upon the rights Sayyed would *prefer* to exercise; rather, it is based upon the rights Sayyed *possesses*. Here, Sayyed possesses a present, unconditional right to immediately access the entirety of his retirement accounts, so, stepping into his shoes, the government may clearly access his Vanguard and Aetna funds, subject to the tax penalties faced by Sayyed for early distribution of his retirement funds.

### C. Sayyed's "unrestricted" retirement accounts are not "earnings"

The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a). A lump-sum distribution of retirement funds is clearly not compensation paid for personal services or periodic payments pursuant to a retirement program. But Sayyed argues that because his retirement funds derive directly from his earned wages, *i.e.*, his employer deposits a portion of his earned wages in his retirement account each paycheck, the funds should be considered "earnings" under the CCPA. However, the Supreme Court has "cautioned that earnings do not pertain to every asset traceable in some way to compensation." *Lee*, 659 F.3d at 621 (citing *Kokoszka v. Belford*, 417 U.S. 642, 648 (1974)).

In enacting the CCPA, Congress intended to protect "periodic payment of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Kokoszka*, 417 U.S. at 651. Consistent with this intent,

the CCPA expressly protects persons already receiving periodic payments pursuant to a retirement plan. *See United States v. DeCay*, 620 F.3d 534, 544-545 (5th Cir. 2010); *United States v. Fussell*, 567 F. App'x. 869, 871-72 (11th Cir. 2014). But the CCPA is silent as to lump-sum distributions of retirement funds, suggesting that such distributions do not qualify as "earnings." This is further supported by the fact that a lump-sum distribution of retirement funds is not akin to a periodic payment of compensation needed to support the wage earner and his family on a regular basis. Thus, we find that a lump-sum distribution of retirement funds does not qualify as "earnings" under the CCPA.

Our holding does not mean, as Sayyed contends, that retirement accounts become worthless. Rather, as we explain above, the government only retains those rights the defendant possesses when it steps into his shoes. If a defendant's right to receive a lump-sum distribution of his retirement funds is subject to a condition, the government would not have any more access than the defendant. Rather it would also be subject to such condition. So here, where Sayyed has an unrestricted, present right to request lump-sum distributions from his retirement accounts, the government, stepping into his shoes, may exercise this right pursuant to the restitution judgment.

### III. CONCLUSION

We AFFIRM the district court's order granting the government's motion for turnover.