**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-6706**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JON LAWRENCE FRANK,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:17-cr-00114-LMB-MSN-1)

Argued: March 12, 2021                                      Decided: August 10, 2021

Before NIEMEYER, KEENAN, and HARRIS, Circuit Judges.

Vacated and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Niemeyer and Judge Keenan joined.

**ARGUED:** Cadence Alexandra Mertz, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Laura Michelle Grimes, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia; Andrew L. Kline, CLEARY GOTTLIEB STEEN & HAMILTON LLP, Washington, D.C., for Appellant. G. Zachary Terwilliger, United States Attorney, Daniel T. Young, Assistant United States Attorney, OFFICE OF THE

UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

This appeal requires us to decide whether and to what extent retirement benefits protected by the anti-alienation provision of the Employee Retirement Income Security Act of 1974 ("ERISA") are subject to criminal restitution orders under the Mandatory Victims Restitution Act of 1996 ("MVRA"). The MVRA provides expressly that restitution orders may be enforced against "all property or rights to property" and "[n]otwithstanding any other Federal law." *See* 18 U.S.C. § 3613(a). Largely for that reason, we agree with the district court that the MVRA permits the seizure of defendant Jon Lawrence Frank's 401(k) retirement account, notwithstanding ERISA's protections, in order to compensate the victim of his crime.

At the same time, we clarify that when the government enforces a restitution order under the MVRA, it stands in the shoes of the defendant himself, acquiring whatever rights to 401(k) retirement funds he possesses – no less, but also no more. That means, here, that the government's access to the funds in Frank's 401(k) account may be limited by terms set out in Frank's plan documents or by early withdrawal penalties to which Frank would be subject. The district court did not consider those questions. Accordingly, we remand so that the district court may decide in the first instance what present property right Frank has in his 401(k) account and, by extension, what funds from that account the government may garnish pursuant to the court's restitution order.

Finally, we reject Frank's argument that the garnishment restrictions of the Consumer Credit Protection Act provide an additional limitation on the government's right to access his 401(k) funds. A lump-sum distribution from a 401(k) account does not qualify

3

as "earnings" protected by that statute, *see* 15 U.S.C. § 1673(a), and so the district court need not account for those garnishment restrictions on remand.

## I.

From 2007 to 2017, Jon Lawrence Frank embezzled over $19 million from his former employer, NCI Information Systems, Inc. ("NCI"), making unauthorized payments of company funds to his personal bank accounts. In June 2017, after his scheme was uncovered, Frank pleaded guilty to one count of wire fraud under 18 U.S.C. § 1343. The district court sentenced Frank to 78-months' imprisonment and three years' supervised release. As relevant here, the court also ordered Frank to "pay restitution in the total amount of $19,440,331." J.A. 35. To date, the government has recovered from Frank and remitted to NCI over $7 million.

This appeal arises out of the government's effort to garnish Frank's 401(k) retirement account under the Mandatory Victims Restitution Act of 1996 ("MVRA"), Pub. L. No. 104-132, 110 Stat. 1227–41, to further satisfy the criminal restitution order against him. In September 2019, the government filed an Application for Writ of Continuing Garnishment, *see* 18 U.S.C. § 3664(m)(1)(A)(i), naming Charles Schwab & Co., Inc. ("Schwab") as the garnishee and seeking access to Frank's 401(k) account. While employed at NCI, Frank was covered by the company's Schwab-administered retirement plan, and Schwab currently holds approximately $479,504 in a 401(k) account in Frank's name. The terms of Frank's defined contribution plan provide that Frank, once no longer employed by NCI, can request that his 401(k) assets be "distributed in a lump sum," J.A.

4

87, except that 20% of that benefit payment will be withheld and remitted to the Internal Revenue Service as a credit against Frank's tax liability. Participants who take distributions before they reach retirement age – here, 59 and a half years – "may also have to pay an additional 10% tax." J.A. 91. The parties agree that Frank's plan is covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461.

Frank moved to quash the writ. His primary argument was that the government could not garnish his retirement account at all because the account was governed by ERISA's anti-alienation provision, which protects retirement plans against claims by third parties. *See* 29 U.S.C. § 1056(d)(1) (providing that qualified plans "may not be assigned or alienated"). And even if the government could access the account, Frank argued, it would be subject to the same withdrawal limits as Frank himself, precluding a lump-sum withdrawal of the full amount. Moreover, Frank contended, the wage garnishment restriction of the Consumer Credit Protection Act of 1968 ("CCPA"), Pub. L. No. 90-321, 82 Stat. 146, would limit the government to taking 25 percent of the funds in the account.

The government's application was referred to a magistrate judge, who rejected Frank's core contention that ERISA bars the government's seizure of his 401(k) account. The key question, the magistrate judge explained, was "whether the MVRA's directive mandating victim restitution trumps ERISA's robust protection of retirement funds." J.A. 165. And the answer, he concluded after a careful analysis of the MVRA, was that it does: "[A]ll standard principles of statutory construction support the conclusion that [the] MVRA authorizes the enforcement of restitution orders against retirement plan benefits, the anti-

5

alienation provision of ERISA notwithstanding." J.A. 171 (quoting *United States v. Novak*, 476 F.3d 1041, 1053 (9th Cir. 2007) (en banc)). In addition, the magistrate judge noted, reading the MVRA to "override" ERISA's anti-alienation provision was consistent with the view of every court of appeals and district court to have considered the issue. J.A. 170.

The magistrate judge then turned to the question of exactly how much the government could take from Frank's account. The parties agreed, the magistrate judge explained, that the government acquires whatever "present right" the account-holder himself possesses in property garnished under the MVRA, J.A. 177 – which means that "[i]f a defendant's right to receive a lump-sum distribution of his retirement funds is subject to a condition, the government would not have any more access than the defendant," J.A. 177 (alteration in original) (quoting *United States v. Sayyed*, 862 F.3d 615, 619–20 (7th Cir. 2017)). So here, because Frank, no longer working for NCI, was entitled to a lump-sum pay-out of his 401(k) account, so too was the government; that Frank might "*prefer* [not] to exercise" his right to an immediate distribution, given penalties and tax implications, was beside the point. J.A. 177–78 (quoting *Sayyed*, 862 F.3d at 619). But because the government could do no more than step into Frank's shoes when seizing his property, its disbursement from his 401(k) account would be subject to "any tax withholdings by Schwab under the terms of the plan." J.A. 179. The CCPA, on the other hand, would not limit the government's recovery, because that statute's garnishment cap at 25 percent of "earnings" does not apply to single, lump-sum withdrawals from retirement accounts. *See* J.A. 178–79 (citing 15 U.S.C. § 1673(a)).

With one exception, the district court "adopt[ed] the findings of fact and conclusions of law" in the magistrate judge's report. *United States v. Frank*, No. 1:17-cr-114 (LMB/MSN), 2020 WL 2205066, at *3 (E.D. Va. May 6, 2020). The court first agreed with the magistrate judge's threshold and critical conclusion: "that the MVRA demonstrates Congress's clear intent to override ERISA's anti-alienation provision," allowing for seizure of Frank's 401(k) account to enforce a criminal restitution order. *Id.* at *2. The court also agreed that the government, "stepping into defendant's shoes, can require a lump-sum liquidation of defendant's 401(k) account." *Id.* And finally, like the magistrate judge, the district court concluded that the CCPA's wage garnishment cap does not apply to single, lump-sum distributions from retirement accounts. *See id.*

Unlike the magistrate judge, however, *see* J.A. 179, the district court did not specify that the government's recovery from Frank's 401(k) would be limited by "tax withholdings by Schwab under the terms of the plan." Instead, the court held that "the government has the right to force the immediate liquidation of Frank's *entire* 401(k) account" – and then, that as a "matter of equity," the government should remit ten percent of the account to Frank to "offset any additional tax penalty incurred." *Frank*, 2020 WL 2205066, at *2 (emphasis added); *see id.* at *3. Accordingly, the district court ordered Schwab to turn over 90 percent of Frank's account to the government, J.A. 221–22, regardless of the amount that would be withheld from any benefit distribution to Frank under the terms of the plan.

Frank filed a timely notice of appeal from the district court's order.

7

## II.

On appeal, Frank contends, first and foremost, that the district court erred when it rejected his argument that ERISA altogether prohibits the government from seizing his 401(k) retirement account. In the alternative, he argues that the district court disregarded limits on how *much* of his account is available to the government – limits imposed by statute and the plan documents. These arguments sound in statutory and contractual interpretation, so we review the district court's decision de novo. *See Stone v. Instrumentation Lab'y Co.*, 591 F.3d 239, 242–43 (4th Cir. 2009) (applying de novo review to issues of statutory interpretation); *Ret. Comm. of DAK Ams. LLC v. Brewer*, 867 F.3d 471, 479 (4th Cir. 2017) (applying de novo review to interpretation of ERISA plans).

We agree with the district court's critical holding that the MVRA authorizes garnishment of ERISA-protected retirement funds pursuant to criminal restitution orders. We further agree with the district court that the government is entitled to the same lump-sum distribution from Frank's 401(k) account as Frank himself, and that the CCPA's garnishment cap does not apply. We part ways with the district court only in one respect: The government is entitled to seize no more than the funds to which Frank has a present property right, and the district court did not consider whether there are conditions limiting Frank's current property right in his 401(k) account. We therefore vacate the judgment of the district court and remand for a determination of what present right Frank has – and, by extension, the government has – in the account's funds.

8

## A.

We begin with the central issue on appeal: whether the MVRA authorizes the garnishment of funds to satisfy a criminal restitution order when those funds otherwise would be protected from alienation by ERISA. Two other courts of appeals have addressed this issue. Relying on the clear language and broad sweep of the MVRA, both have held that ERISA does not bar the garnishment of retirement assets to satisfy a restitution order or fine under the MVRA. *See Novak*, 476 F.3d at 1057–60; *United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2006). Two other courts of appeals have held that the MVRA permits the garnishment of retirement funds otherwise covered by anti-alienation provisions very similar to ERISA's. *See United States v. DeCay*, 620 F.3d 534, 540–41 (5th Cir. 2010) (holding the MVRA permits the garnishment of qualified trusts, notwithstanding the Internal Revenue Code's anti-alienation clause covering such retirement benefits); *United States v. Hosking*, 567 F.3d 329, 334–35 (7th Cir. 2009), *abrogated on other grounds by Lagos v. United States*, 138 S. Ct. 1684, 1687 (2018) (same).

We agree with the decisions of our sister circuits, which reflect a nationwide judicial consensus that such retirement funds like Frank's can be used to satisfy criminal restitution orders. *See Frank*, 2020 WL 2205066, at *2 (collecting cases showing every court of appeals and district court to address the issue has permitted the garnishment of ERISA-protected funds). We therefore hold that ERISA does not bar the seizure of retirement funds pursuant to a restitution order under the MVRA.

9

1.

We begin by laying out the two statutory provisions that intersect in this case: ERISA's prohibition on disbursing retirement funds to third parties, and the MVRA's requirement that defendants pay – and courts compel – restitution for certain crimes. In 1974, Congress enacted ERISA to "protect . . . the interests of participants in private pension plans and their beneficiaries." 29 U.S.C. § 1001(c). To achieve that goal, what is known as ERISA's "anti-alienation" provision "broadly protects covered retirement benefits from dissipation through payment to third parties," *Novak*, 476 F.3d at 1045, requiring pension plans to provide that their benefits "may not be assigned or alienated," 29 U.S.C. § 1056(d)(1). That rule includes only two express exceptions, "for domestic relation orders and for offsets to recover for wrongs committed against the retirement plan." *Novak*, 476 F.3d at 1045; *see* 29 U.S.C. § 1056(d)(3)–(4).

The MVRA, enacted in 1996, butts up against this anti-alienation provision, mandating that courts "shall order" defendants to make restitution to victims for specific offenses, "[n]otwithstanding any other provision of law." 18 U.S.C. § 3663A(a)(1); *see id.* § 3663A(c)(1)(A)(ii). The MVRA then instructs the government to enforce criminal restitution orders in the same manner as criminal fines. *See id.* § 3664(m)(1)(A)(i). And that, in turn, allows for broad enforcement of such orders, incorporating the following statutory language:

> The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. *Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine*

10

*may be enforced against all property or rights to property of the person fined*, except that--

> (1) property exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law;

> (2) section 3014 of chapter 176 of title 28 shall not apply to enforcement under Federal law; and

> (3) the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal law or State law.

*Id.* § 3613(a) (emphasis added).

The parties do not dispute that none of the express exemptions laid out in § 3613(a) applies to Frank's 401(k) account. Those exemptions, which largely track exemptions from the enforcement of tax levies, *see DeCay*, 620 F.3d at 541, include only four categories of retirement plans, *see* 26 U.S.C. § 6334(a)(6), and Frank's account does not fall into any of them. So we are left with the broad mandate from § 3613(a)'s first paragraph, subjecting to a restitution enforcement order "all property or rights to property." 18 U.S.C. § 3613(a); *see also Novak*, 476 F.3d at 1044–45. The interplay between that wide-reaching provision and ERISA's anti-alienation protection is the question before us now.

2.

We begin our resolution of the tension between these statutory commands with the language of the MVRA, which permits the enforcement of criminal restitution orders against "all property or rights to property," "[n]otwithstanding any other Federal law." 18 U.S.C. § 3613(a). In his well-reasoned opinion, the magistrate judge determined that "all

11

standard principles of statutory construction support the conclusion that [the] MVRA authorizes the enforcement of restitution orders against retirement plan benefits, the anti-alienation provision of ERISA notwithstanding." J.A. 171 (quoting *Novak*, 476 F.3d at 1053). Mostly for the reasons given by the magistrate judge, we agree.

First, the plain meaning of the statutory text is unambiguous. The MVRA expressly states that criminal restitution orders may be enforced against "*all* property or rights to property." 18 U.S.C. § 3613(a) (emphasis added). That text makes "quite clear" that absent an express exemption, all of a defendant's assets are subject to a restitution order. *Novak*, 476 F.3d at 1046. Indeed, addressing the same statutory language in a different context, the Supreme Court has emphasized that the phrase "'all property and rights to property' . . . , is broad and reveals on its face that Congress meant to reach every interest in property." *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 719–20 (1985) (quoting 26 U.S.C. § 6321).

Moreover, § 3613 straightforwardly addresses how we should resolve any incompatibility between this broad directive and ERISA's anti-alienation provision: The MVRA's specification of "all" property applies "*[n]otwithstanding any other Federal law.*" 18 U.S.C. § 3613(a) (emphasis added). As the magistrate judge explained, "Congress's use of a 'notwithstanding' clause 'clearly signals the drafter's intention that the provisions of the "notwithstanding" section override conflicting provisions of any other section.'" J.A. 172 (quoting *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993)); *see also Cisneros*, 508 U.S. at 18 (explaining this principle applies in "construing statutes"); *Novak*, 476 F.3d at 1046 ("The Supreme Court has indicated as a general proposition that

12

statutory 'notwithstanding' clauses broadly sweep aside potentially conflicting laws."). That principle applies with full force here. Congress's mandate that the MVRA allows for seizure of all property or rights to property *notwithstanding* any other federal law makes clear that ERISA's anti-alienation provision cannot impede enforcement of criminal restitution orders against 401(k) accounts.

Were there any doubt that Congress meant what it said, the MVRA's statutory context would resolve it, further demonstrating that restitution orders may be enforced against ERISA-protected 401(k) accounts. To begin, the MVRA expressly exempts from the reach of restitution orders four types of federally authorized pensions, not including ERISA-protected retirement accounts. *See* 18 U.S.C. § 3613(a)(1). Each of those exempted pensions, however, is separately protected by an anti-alienation provision like ERISA's. *See* 10 U.S.C. §§ 1440, 1450(i) (specified military pensions); 38 U.S.C. § 1562(c) (Medal of Honor pensions); 45 U.S.C. § 231m(a) (Railroad Retirement Act pensions); *id.* § 352(e) (Railroad Unemployment Insurance Act benefits). As the magistrate explained, there would be no need to exempt those pensions from the MVRA if an anti-alienation provision – like ERISA's – already had the same effect. Put differently, by "expressly exempting already-inalienable property," Congress made clear that an anti-alienation provision by itself was "not sufficient" to protect a retirement account from garnishment under the MVRA. J.A. 173. "In this context, Congress's failure to include ERISA-covered plans in the list of exempted retirement plans 'has substantial significance.'" J.A. 173 (quoting *Novak*, 476 F.3d at 1049).

13

Similarly, the MVRA's express *inclusion* of Social Security Act benefits as property subject to restitution, *see* 18 U.S.C. § 3613(a) (providing that the government can garnish "all property" pursuant to criminal restitution orders, "[n]otwithstanding . . . section 207 of the Social Security Act"), strongly suggests that ERISA-protected assets likewise are available to the government. As the Ninth Circuit explained in *Novak*, "Congress has afforded *greater* protections to Social Security benefits against alienation than those afforded to retirement plans covered by ERISA." 476 F.3d at 1047. If Congress was prepared to subordinate even those greater anti-alienation protections to the MVRA's restitution mandate, then it stands to reason that the MVRA would override ERISA's lesser protections, as well. *See id.* at 1048 ("It would . . . be anomalous to interpret § 3613(a) as abandoning the protection of Social Security benefits but not of retirement plans covered by ERISA.").

Frank sees it differently, arguing that by singling out Social Security benefits as otherwise non-alienable property subject to restitution orders, the MVRA left other non-alienable property – like ERISA-protected retirement accounts – outside its scope. We disagree. Unlike ERISA, the Social Security Act requires that if Congress wants to override its anti-alienation provision, it do so by "express reference." 42 U.S.C. § 407(b). The MVRA thus supplies that express reference. But because "there was no need similarly to specify" ERISA's anti-alienation provision, the "'all property' and 'notwithstanding' clauses, taken together, were sufficient to accomplish that end," *Novak*, 476 F.3d at 1047, and Congress's failure to reference ERISA expressly does not mean that it intended a different result.

14

Finally, we note yet another indication that ERISA-protected accounts are subject to MVRA restitution orders: The MVRA makes clear that restitution orders operate in the same manner as tax levies, and it is well established that ERISA-protected accounts are not exempt from levies to satisfy outstanding tax obligations. As for the first step in this reasoning, it is undisputed that the MVRA's treatment of restitution orders deliberately parallels the treatment of tax levies. The MVRA expressly specifies that a restitution order "is a lien in favor of the United States . . . as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code." 18 U.S.C. § 3613(c). And the language of § 3613(a) of the MVRA is nearly identical to that of 26 U.S.C. § 6334, the tax levy statute. *See* 26 U.S.C. § 6334(c) ("Notwithstanding any other law of the United States (including section 207 of the Social Security Act), no property or rights to property shall be exempt from levy other than the property specifically made exempt . . . .").

As the magistrate judge explained, the MVRA's equation of restitution orders with tax levies is significant for two reasons. First, courts uniformly have held that under § 6334(c), tax levies may be enforced against assets otherwise protected by anti-alienation provisions, including ERISA's. *See Hosking*, 567 F.3d at 335 (collecting cases from Sixth, Ninth, Tenth, and Eleventh Circuits); *United States v. Taylor*, 338 F.3d 947, 950 n.3 (8th Cir. 2003); *see also* 26 C.F.R. § 1.401(a)-13(b)(2) (stating tax levies can be enforced against qualified retirement plans). And when two statutes addressing a similar subject matter use similar language, we generally will construe that language consistently. *See Novak*, 476 F.3d at 1051 (citing *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Second, that rule of thumb has special force here, because "Congress was aware of this

judicial interpretation [of § 6334] when it decided to replicate the language of the tax levy statute in the restitution enforcement statute." J.A. 174. We presume that Congress is aware of pre-existing judicial interpretations of language when it uses the same language in a different statute, *see Cannon v. Univ. of Chi.*, 441 U.S. 677, 696–98 (1979), and so it is especially likely that when Congress used the tax levy statute as the model for the MVRA, it intended to bring with that language the right of the government to garnish ERISA-protected accounts, *see Novak*, 476 F.3d at 1051.

3.

In the face of this straightforward and one-sided exercise in statutory construction, Frank raises several arguments for why § 3613 nevertheless cannot be read to make ERISA-protected retirement plans subject to restitution orders. Like other courts to consider these arguments, we find them unpersuasive.

Frank relies heavily on *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365 (1990), in which the Supreme Court held that ERISA's anti-alienation provision protected the pension benefits of an embezzler against a union's efforts to impose a constructive trust to recoup its losses. *Id.* at 375–76. The union argued that the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") effectively overrode ERISA's protections when it gave unions a right of action to "recover damages or secure an accounting or other appropriate relief." *Id.* at 374 (quoting 29 U.S.C. § 501(b)). The Supreme Court disagreed. Applying the proposition that "a specific statute will not be controlled or nullified by a general one" absent a "clear intention otherwise," the Court held that a "general reference" to "other appropriate relief" did not demonstrate a clear

16

intent to allow unions to seize retirement funds in the face of ERISA's specific and express protections. *Id.* at 375–76 (internal quotation marks omitted).

As the magistrate judge explained, that principle has no applicability here, for two reasons. First, the MVRA, unlike the LMRDA at issue in *Guidry*, is not more "general" than ERISA for these purposes. ERISA prevents certain retirement assets from being disbursed to third parties; the MVRA, in contrast to the LMRDA's vague "other appropriate relief" clause, instructs that all property not specifically exempted is subject to criminal restitution orders, including assets that normally would be non-alienable. The two statutes, in other words, address the same issue at the same level of specificity from different points of view. *See Novak*, 476 F.3d at 1055 ("[The] MVRA is therefore much more specific than is the LMRDA in addressing the same issue addressed by the ERISA anti-alienation provision.").

Second, even if the "specific over the general" canon otherwise would apply, the MVRA still would govern, because the MVRA manifests the necessary "clear intention," *Guidry*, 493 U.S. at 375, to bring ERISA-protected accounts within its scope. Section 3613 expressly provides that restitution orders are enforceable against all property "notwithstanding" contrary federal law, and as described above, all contextual indicators confirm that the MVRA takes precedence over ERISA's anti-alienation provision. That is enough to satisfy *Guidry*, which requires that Congress's intent be clear, not that Congress must call out ERISA by name to allow for the alienation of funds that otherwise would be protected. *See Novak*, 476 F.3d at 1054 ("*Guidry* did *not* apply a special plain statement

17

rule, requiring that Congress explicitly mention the ERISA anti-alienation provision in an ensuing statutory provision in order to negate the ERISA provision.").

Frank next relies on ERISA's so-called "self-help" exemption, enacted in 1997 to allow ERISA-covered retirement plans to use participants' retirement benefits to offset losses caused by those participants' crimes against the plan. *See* 29 U.S.C. § 1056(d)(4). Citing the dissent in *Novak*, *see* 476 F.3d at 1071–72 (Fletcher, W., J.), Frank argues that this ERISA amendment would have been unnecessary had Congress believed that criminal restitution already was available against ERISA-protected retirement accounts by virtue of the MVRA. But as the majority in *Novak* explained, ERISA's self-help exemption and the MVRA address different issues: The MVRA addresses which assets are subject to *government* enforcement of restitution orders, while the 1997 amendment concerns the remedies available to a *plan itself* – "without having to obtain the assistance of the U.S. Attorney's Office or to follow the procedure[s]" laid out in the MVRA. *See id.* at 1056–57 (majority opinion). Moreover, the self-help remedy extends to both state and federal criminal convictions, *see* 29 U.S.C. § 1056(d)(4)(A)(i)–(ii), while the MVRA covers only federal criminal restitution orders, *see Novak*, 476 F.3d at 1057. Given these differences, it would have been entirely logical for Congress to add to ERISA its plan-specific remedy while also providing in the MVRA for government enforcement of restitution orders against retirement accounts.

Finally, Frank insists that even if Congress has made clear its intent to apply the MVRA to retirement plans protected by ERISA, we must reject that reading because the MVRA does not rebut the presumption against "repeals by implication." But that is a

18

category mistake. This is a case about statutory construction, not repeal by implication: As we have explained, the text of § 3613 resolves the apparent tension between ERISA and the MVRA, providing that criminal restitution orders are to be enforced "notwithstanding other Federal law," and that is all that is required to resolve the question before us.

The repeal by implication doctrine on which Frank relies, by contrast, applies when two laws are in direct conflict and Congress has *not* "overtly state[d]" which should prevail; the question in those cases is whether courts may infer, from chronology and other contextual clues, that Congress intended the second statute to repeal all or part of the first. *See Patten v. United States*, 116 F.3d 1029, 1033–34 (4th Cir. 1997). For good reason, repeals by implication are disfavored, and courts may infer such a repeal only where there is an "irreconcilable conflict" between statutes and also a "clear and manifest" congressional intent to repeal. *Id.* at 1034 (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976)). And here, Frank argues, there is no conflict that qualifies as irreconcilable, because both ERISA's anti-alienation provision and the MVRA may be given effect so long as ERISA operates as a "minor exception" to the MVRA. Even if Congress has made its intention clear, that is, the lack of a direct conflict means that we have no warrant to "repeal" ERISA's protections by implication.

But there is nothing implied about the MVRA's dictate that enforcement of criminal restitution orders takes precedence over ERISA's anti-alienation provision: The MVRA "overtly state[s]," *id.* at 1033, that all property rights not expressly exempted are subject to criminal restitution, "notwithstanding" contrary federal law. Indeed, "notwithstanding"

19

clauses like the MVRA's are precisely how Congress specifies that one statute "supersede[s]" another – and a "clearer statement is difficult to imagine." *Cisneros*, 508 U.S. at 18 (internal quotation marks omitted). To resolve this case, in other words, we need only construe the plain text of the MVRA, without resort to a doctrine that turns on implications from timing. Frank points us to no case from the Supreme Court or this circuit – and we could find none – applying the implied repeal analysis to a statute with a "notwithstanding" clause like the one before us here. *Cf. id.* (citing approvingly cases applying ordinary statutory construction analysis to "notwithstanding" clauses without reference to implied repeal).[1] Instead, we follow Congress's clear intent – manifested in the MVRA's plain language and bolstered by every contextual statutory cue – and hold that ERISA's anti-alienation provision does not impede the enforcement of a criminal restitution order against Frank's 401(k) retirement account.

**B.**

Our conclusion that the MVRA permits the government to seize retirement funds otherwise protected by ERISA answers the primary question before us, but it does not end

---

[1] We recognize that the Ninth Circuit, constrained by prior circuit precedent, did apply the presumption against implied repeals to the question we face. *See Novak*, 476 F.3d at 1052–53; *id.* at 1069 (Fletcher, W., J., dissenting). It did so with some hesitation, acknowledging that the doctrine might not pertain, *see id.* at 1052 n.10 (majority opinion), and in a form that allowed the MRVA's "notwithstanding" clause to overcome the presumption, *see id.* at 1052–53 (recognizing "notwithstanding" clause as "a method – akin to an express reference to the superseded statute – by which Congress can demonstrate that it intended to partially repeal an Act" (internal quotations and alteration omitted)). For the reasons given above, we think the more straightforward approach is to recognize that this case does not implicate the doctrine of implied repeals. But we agree with *Novak* that even if that doctrine did apply, the result would be the same. *See id.*

20

this case. The MVRA permits the government to take "all property or rights to property" held by Frank in his 401(k) account. 18 U.S.C. § 3613(a). That raises an additional question: What exactly is Frank's "property" interest in his 401(k) account? The district court did not consider that question, and rather than engaging in fact-finding on appeal, we remand so that the district court may make that determination in the first instance, under the standard we lay out below.

The parties do not dispute the basic principle that governs this inquiry. When it enforces a tax levy, the government "steps into the taxpayer's shoes" and acquires "whatever rights the taxpayer himself possesses." *Nat'l Bank of Com.*, 472 U.S. at 725 (internal quotation marks omitted). As we have explained, the MVRA treats restitution orders like tax levies for purposes of government enforcement. *See* 18 U.S.C. § 3613(a), (c). It follows that the same rule applies here, so that the government's rights to Frank's 401(k) retirement funds are precisely the same as those of Frank himself. *See United States v. Sayyed*, 862 F.3d 615, 618–19 (7th Cir. 2017); *Novak*, 476 F.3d at 1061. And Frank's property right in his 401(k) account – and, again, there is agreement on this point – is the full amount to which he has a "present, unconditional right to access," *Sayyed*, 862 F.3d at 619, or whatever he could "presently demand," *Novak*, 476 F.3d at 1062.

Frank's present right to access his 401(k) funds, in turn, depends in large part on the terms of his retirement plan. *See id.* at 1061–62 ("A participant's right to receive cash from his retirement plan at any given time is . . . limited to the right to receive the amount then available under the terms of the plan."). To the extent that plan allows Frank present access to all or some portion of his funds, the government has the same right of access. *See Nat'l*

21

*Bank of Com.*, 472 U.S. at 726 (explaining in tax levy context that government has right to seize any funds that the "taxpayer has the unrestricted right to withdraw"). But the reverse is true as well: To the extent that Frank *cannot* immediately withdraw all or some of the funds from his account, neither can the government. *See Sayyed*, 862 F.3d at 619–20.

The application of this basic principle leads us to agree with much of the district court's decision. As the district court explained, because Frank is entitled to a lump-sum disbursement from his 401(k) account, so is the government. *See Frank*, 2020 WL 2205066, at *2. Frank's plan expressly states that because he no longer works for NCI, he is entitled to make a lump-sum withdrawal from his account at any time. And while an immediate liquidation might have future tax implications that Frank would like to avoid – triggering, for instance, tax obligations on the newly-withdrawn funds – that does not mean he lacks the present right to a lump-sum withdrawal. The government's authority to seize funds from Frank's 401(k) is "not based upon the rights [Frank] would *prefer* to exercise; rather, it is based upon the rights [Frank] *possesses*." *Sayyed*, 862 F.3d at 619.

Frank argues, however, that there remain additional limits on his present ability to withdraw funds from his account. First, there are the limits prescribed by his plan document. In a section entitled "20% Withholding on Taxable Distributions," Frank's plan provides that Schwab must withhold 20 percent of any benefit payment, to be remitted to the Internal Revenue Service as a credit against his tax liability. J.A. 91. That withholding appears to be mandatory. *See* J.A. 91 (providing that a participant "cannot elect out of the 20% withholding," barring exceptions not applicable here). Moreover, participants who take a distribution before they reach age 59 and a half – like Frank, who is 52 – "may also

22

have to pay an additional 10% tax." J.A. 91. And second, Frank argues that even apart from his plan terms, his present right to his 401(k) funds is limited by the fact that any withdrawal would be subject to an immediate ten percent tax penalty, effectively leaving him with access to only 90 percent of the funds. How that ten percent penalty relates to the "additional 10% tax" contemplated by the plan documents – whether Schwab automatically would withhold the ten percent penalty from any benefit distribution to Frank – is unclear.

The magistrate judge agreed with Frank, at least in part, recommending that a lump-sum withdrawal from Frank's 401(k) account be turned over to the government "with the exception of any tax withholdings by Schwab under the terms of the plan." J.A. 179. The district court, however, seems not to have considered this set of questions, ruling instead that while the government had a right to Frank's entire account, Frank should be permitted to retain 10 percent "as a matter of equity," to help offset his tax obligations. *Frank*, 2020 WL 2205066, at *2–3. To be clear, we do not fault the district court here; the complications regarding Frank's present right to the funds in his 401(k) were not presented to that court with great clarity. But because we are a "court of review, not first view," *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 243 (4th Cir. 2020), we remand so that the district court may resolve these issues in the first instance.

Specifically, the district court should determine whether the terms of Frank's plan in fact require Schwab to withhold 20 percent of any present withdrawal. If they do, then those terms would constitute a limit on Frank's ability to presently withdraw from the account – which means, as explained above, that the government, too, would be so limited

23

in garnishing the account's funds.  On our reading, the plan indeed mandates a 20 percent withholding.  But this is a question of plan construction that the district court did not decide and the parties have yet to address in any depth, and so we leave its resolution to the district court on remand.

The district court also should determine whether the government's proposed lump-sum distribution would trigger an early withdrawal penalty.  As the Seventh Circuit held in *Sayyed*, an early withdrawal penalty assessed against a lump-sum liquidation – whether withheld by Schwab under the terms of Frank's plan or separately imposed by law – also would qualify as a limit on Frank's right to access his 401(k) funds, and thus as a parallel limit on the government's right of access.  *See* 862 F.3d at 619 (explaining that the government's right to enforce its criminal restitution order against a 401(k) account is "subject to the tax penalties faced by [the defendant] for early distribution of his retirement funds").  Again, we leave it to the district court to sort out whether such a penalty would be imposed in this case and, if so, how it would interact with the potential "additional 10% tax" described in Frank's plan document.[2]

---

[2] The government submits that there is no need for the district court to consider this question, because it is clear – as with involuntary withdrawals pursuant to tax levies, *see* 26 U.S.C. § 72(t)(2)(A)(vii) – that no penalty would be assessed against an involuntary withdrawal in this case.  Without opining on the ultimate merits, we think the issue is not so clear-cut.  The government has refused to commit itself to forgoing a penalty against Frank, *see* J.A. 145, and the Seventh Circuit, as noted above, appears to have concluded that there *would* be tax penalties imposed on an early distribution pursuant to a government restitution order, *see Sayyed*, 862 F.3d at 619.  And separate from any penalty imposed by tax law, whether the terms of Frank's plan would themselves require an extra ten percent withholding for an early withdrawal is an unresolved factual question for the district court to consider in the first instance.

## C.

Frank argues that there is one final limit on the amount of money the government may seize from his 401(k) account: Under the Consumer Credit Protection Act, Frank contends, the government may garnish only 25 percent of the account's funds. Like the district court, we disagree.

The plain text of the CCPA resolves this question. Under the CCPA, and subject to exceptions not relevant here, there is a cap of 25 percent on the portion of an individual's weekly "aggregate disposable earnings" that may be garnished. 15 U.S.C. § 1673(a). And according to the statute, the term "earnings" means "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes *periodic payments pursuant to a pension or retirement program*." *Id.* § 1672(a) (emphasis added). Like the Seventh Circuit, we think that statutory text clearly excludes from the definition of "earnings" a one-time, lump-sum distribution from a retirement fund. *See Sayyed*, 862 F.3d at 619. The CCPA expressly addresses retirement accounts, and specifies which forms of retirement account payments – those that are "periodic" – will qualify as "earnings" subject to its garnishment cap. That specification would have been entirely superfluous had Congress intended also to cover *non-periodic* payments, like the single lump-sum distribution at issue here.

Frank responds by pointing out that the CCPA's garnishment cap is not limited exclusively to payments made with a defined frequency, and that "earnings" also includes "bonus[es]" and other performance-related discretionary payments. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, CCPA2018-1NA, at 3 (Apr. 12, 2018)

25

(explaining that whether a lump-sum payment qualifies as earnings under the CCPA depends on "the compensatory nature of the payment, *i.e.*, whether the payment is for services provided by the employee, rather than the frequency of the payment"). That may be so when it comes to payments *other* than those from retirement accounts. But retirement accounts are different because the statute treats them differently, singling out for inclusion "periodic payments" and only periodic payments from such accounts.

While the text is sufficient to resolve this issue, we note that the statutory distinction here makes perfect sense. The point of the CCPA is to protect "periodic payment of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Sayyed*, 862 F.3d at 619 (quoting *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974)). Bonuses and the like, even if paid irregularly, clearly qualify as "compensation" under § 1672(a)'s definition. And *periodic* payments from retirement accounts squarely implicate Congress's concern with weekly or monthly support of wage earners and their families. But one-time retirement account liquidations check neither of those boxes. Lump-sum payouts of funds that often have been invested for decades are not the same kind of direct "compensation paid or payable for personal services," *see* 15 U.S.C. § 1672(a), as bonuses or commissions. *See Kokoszka*, 417 U.S. at 651 (cautioning that not "every asset that is traceable in some way to . . . compensation" qualifies as "earnings" under the CCPA (internal quotation marks omitted)). Nor, given their one-time nature, are they "akin to a periodic payment of compensation needed to support the wage earner and his family on a regular basis." *Sayyed*, 862 F.3d at 619.

26

In sum, we agree with the district court and the Seventh Circuit that a lump-sum distribution of retirement funds does not qualify as "earnings" subject to the CCPA's garnishment cap. On remand, the district court need not account for the CCPA's restrictions in determining what portion of the funds in Frank's 401(k) account may be seized by the government to satisfy the criminal restitution order against him.

## III.

For the foregoing reasons, we vacate the judgment of the district court and remand for proceedings consistent with this opinion.

*VACATED AND REMANDED*